**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DELTA MILLS, INC., <u>et al.</u>,[1] | ) | Case No. 06-11144 (CSS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | |

**GLOBAL NOTES REGARDING DEBTORS' SCHEDULES OF ASSETS
AND LIABILITIES AND STATEMENT OF FINANCIAL AFFAIRS**

       1.    Delta Mills, Inc. ("Delta Mills"), Delta Woodside Industries, Inc. ("DLWI"), and Delta Mills Marketing, Inc. ("Marketing," and, collectively with Delta Mills and DLWI, the "Debtors"), filed their respective Schedules of Assets and Liabilities (as may be amended, the "Schedules") and Statements of Financial Affairs (as may be amended, the "Statements" and, collectively with the Schedules, the "Schedules and Statements"), which are filed contemporaneously herewith. The Schedules and Statements and these Global Notes (the "Global Notes") were prepared pursuant to section 521 of title 11 of the United States Code, 11 U.S.C. §§ 101, <u>et</u> <u>seq.</u> (the "Bankruptcy Code"), and Rule 1007 of the Federal Rules of Bankruptcy Procedure by Debtors' management. Unless otherwise indicated on the Schedules and Statements or the Global Notes, the information provided is as of the close of business on October 12, 2006. These Global Notes are incorporated by reference in, and comprise an integral part of, the Schedules and Statements and should be referred to and reviewed in connection with any review of the Schedules and Statements.

       2.    On October 13, 2006 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") and are being jointly administered under the case number assigned to Delta Mills, Case No. 06-11144 (CSS). The Debtors are operating their businesses as debtors-in-possession under the Bankruptcy Code.

       3.    The financial affairs and businesses of the Debtors are large and complex. While the Debtors' management has made every reasonable effort to ensure that the Schedules and Statements are accurate and complete, based upon information that was available to them at the time of preparation, inadvertent errors and/or omissions may exist and/or the subsequent receipt of information and/or further review and analysis of the Debtors' books and records may result in material changes to the financial data and other information contained therein. Accordingly, the Debtors reserve the right to amend the Schedules and Statements from time to time as may be necessary or appropriate. Moreover, because the Schedules and Statements contain unaudited information that is subject to

---

[1] These jointly administered cases are those of the following debtors: Delta Mills, Inc., Delta Woodside Industries, Inc., and Delta Mills Marketing, Inc.

{00136290 v 4}

further review and potential adjustment, there can be no assurance that the Schedules and Statements are complete or accurate.

        4. The Debtors reserve all rights to amend the Schedules and/or the Statements in all respects, as may be necessary or appropriate, including, but not limited to, the right to dispute or to assert offsets or defenses to any claim reflected on the Schedules as to amount, liability, or classification or otherwise subsequently to designate any claim as "disputed," "contingent," or "unliquidated." A failure to designate any claim as disputed, contingent, and/or unliquidated does not constitute an admission that such claim is not subject to objection. Nothing contained in the Schedules and Statements shall constitute a waiver of the Debtors' rights with respect to the chapter 11 cases and, specifically, with respect to any issues involving equitable subordination and/or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and other relevant nonbankruptcy laws to recover assets or avoid transfers.

        5. Disclosures of information in one Schedule, Statement, or attachment, even if incorrectly placed, shall be deemed to be disclosed in the correct Schedule, Statement, or attachment.

        6. DLWI is a publicly-held corporation and, along with Delta Mills, filed certain financial reports as required by the Securities and Exchange Commission ("SEC") prior to filing its bankruptcy petition. For financial reporting purposes, DLWI prepares consolidated financial statements. The last audit of each of DLWI and Delta Mills was as of June 30, 2005. These Schedules and Statements do not purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles ("GAAP"), nor are they intended to fully reconcile to the financial statements that have been filed with the SEC.

        7. The Debtors use a consolidated cash management system through which the Debtors pay substantially all liabilities and expenses. Accordingly, certain prepetition liabilities and/or payments are reflected on Delta Mills' Schedules and Statements that properly may be allocable to one or more other Debtors. Moreover, the Schedules and Statements for DLWI and Marketing may not reflect all receipts or payments made by Delta Mills on behalf of other Debtors or non-debtors affiliates.

        8. Except as otherwise set forth in these Global Notes, the Schedules or the Statements of any Debtor, intercompany payable and receivable balances (the "Intercompany Claims") have been set forth in the Schedules and Statements to the best of the Debtors' knowledge, information, and belief and in accordance with the Debtors' unaudited accounting records. Intercompany Claims reflected in the Schedules and Statements may have been set-off or netted against other Intercompany Claims.

        9. The Intercompany Tax Accounts Payable account, Deferred Tax Asset account, Deferred Tax Liability account, and other related accounts have not been included in the Statements and Schedules as these accounts do not represent true assets or claims against the estates. Rather, these accounts reflect intercompany tax allocations

related to DLWI's former ownership of multiple operating companies in addition to Delta Mills. Accordingly, these accounts do not represent any value to the estates or claims against the estates and therefore have not been included in the Statements and Schedules. Additionally, any Intercompany accounts relating to Nautilus International, Inc. ("Nautilus"), have not been included in the Statements and Schedules as Nautilus is a non-operating entity with no assets as described more fully in the Declaration of William H. Hardman, Jr., in Support of First Day Relief (D.I. No. 3). Any intercompany accounts relating to Nautilus remaining on the books of the Debtors do not represent any value to the estates or claims against the estates and therefore have not been included in the Statements and Schedules.

10. The preparation of the Schedules and Statements required the Debtors to make estimates and assumptions that affect the reported amounts of assets and liabilities, the disclosure of contingent assets and liabilities, and the reported amounts of revenues and expenses during the reporting period. Actual results could differ from those estimates.

11. Some of the Debtors' scheduled assets and liabilities are unknown and/or unliquidated at this time. In such cases, the amounts are listed as "Unknown," "Undetermined," or as zero balances. Accordingly, the Schedules may not reflect accurately the aggregate amount of the Debtors' assets and liabilities.

12. It would be prohibitively expensive, unduly burdensome, and time-consuming to obtain current market valuations of the Debtors' property interests. Accordingly, to the extent any asset value is listed herein, unless otherwise indicated, net book values, rather than current market values, of the Debtors' interests in property are reflected on the applicable Schedules or Statements. As applicable, certain assets that have been fully depreciated or were expensed for accounting purposes have no net book value and may not be reflected on the Schedules. In addition, the book value stated of certain assets does not reflect any impairment analysis that may be required by GAAP.

13. All of Delta Mills' plants and most of its equipment are the subject of a "Fee in Lieu of Tax" or "FILOT" (the "FILOT") agreement with three counties within the state of South Carolina. These agreements are intended to permit counties to attract business investment by offering property tax incentives. In accordance with South Carolina law, Delta Mills entered into a sale-leaseback agreement (the "Lease") with Greenville, Marlboro, and Florence Counties (collectively, the "Counties"), and DLWI simultaneously acquired, and subsequently transferred to Delta Mills, an Industrial Development Revenue Bond, issued collectively by the Counties (the "Bond"). The arrangement is structured so that Delta Mills' lease payments to the Counties equal and offset the Counties' bond payments to Delta Mills. The Bond is non-recourse to the Counties, the Counties' interests under the Lease are pledged to secure repayment of the Bond, and the Lease and Bond provide for the legal right of offset. Under the terms of the agreements, Delta Mills must annually submit information regarding the value of the machinery and equipment in service in each county. The respective Counties will then accept a fee in lieu of property tax based upon predetermined millage rates. These costs are included in cost of sales in the Debtors' consolidated financial statements. If Delta Mills had not entered into this transaction, property tax payments likely would have been higher. The

agreements have a maximum expiration date of 2017.  Under the Lease, Delta Mills has an option to reacquire such property and terminate the agreement at a nominal price of $1.  If Delta Mills elects to reacquire the subject property prior to the expiration of the arrangement, it likely will be required to make certain adjusting property tax payments.  The Debtors' financial statements have not reflected the FILOT arrangement, and the subject property is included in property, plant, and equipment in the Debtors' financial statements.  Similarly, the subject property is included in property, plant, and equipment in the Schedule A or B, as appropriate, of Delta Mills.

14. Prior to the Petition Date, the Debtors exercised their option to reacquire the property, plant, and equipment located in Florence County, South Carolina (the "Pamplico PP&E") that was originally subject to the FILOT.  The Debtors now own real estate that comprised part of the Pamplico PP&E and the remaining parts of the Pamplico PP&E were sold prior to the Petition Date.  However, Florence County remains a party to the Lease and Bond despite the fact that no property of the Debtors located in Florence County is currently subject to the FILOT.

15. The Debtors have not set forth all causes of action against all third parties as assets in their Schedules and Statements.  The Debtors reserve all of their rights with respect to any causes of action they may have and neither these Global Notes nor the Schedules and Statements shall be deemed a waiver of any such causes of action.

16. The Debtors have sought to allocate liabilities between pre-petition and post-petition periods based on information from research that was conducted in connection with the preparation of the Schedules. As additional information becomes available and further research is conducted, the allocation of liabilities between pre-petition and post-petition periods may change.

17. The liabilities set forth in the Schedules do not include certain potential sources of pre-petition indebtedness if any debts of the same nature have been paid pursuant to an order of the Bankruptcy Court, including, without limitation, employee payroll and benefit obligations.

18. Accounts Receivable are presented net of allowance for doubtful accounts and without offsetting for any mutual counterparty accounts payable, open or terminated contract liabilities, liquidated damages, setoff rights or collateral held by the Debtors.  Likewise, Accounts Payable are shown without consideration of offsetting accounts receivable, open or terminated contracts, liquidated damages, setoff rights, or collateral that has been posted on behalf of the counterparty.  If these accounts were shown net of potential setoffs, the dollar amounts could change significantly.

19. The Debtors have not included on Schedule D parties that may believe their claims are secured through setoff rights, deposits posted by or on behalf of the Debtors, or inchoate statutory lien rights. Such counterparties have been listed on Schedule F.

20.     Delta Mills, Inc., owes an aggregate obligation in the amount of $30,940,750.00, exclusive of accrued and unpaid interest, to holders of the Delta Mills 9.625% Senior Notes Due September 1, 2007 (the "Senior Notes"). The Bank of New York serves as the "Indenture Trustee" under that certain 9.625% Senior Notes Indenture. The Debtors are unable to accurately determine the names and addresses of all owners and/or beneficial holders of the Senior Notes as of the Petition Date. In addition, the Senior Notes may have been sold or otherwise transferred subsequent to the Petition Date. As such, the claims of holders of Senior Notes have been scheduled in the aggregate as a claim of the Indenture Trustee. To the extent that the Debtors know or have been informed of the name and address of certain holders of the Senior Notes, they have been listed on Schedule F for notice purposes only.

21.     While every reasonable effort has been made to ensure the accuracy of Schedule G regarding executory contracts and unexpired leases, inadvertent errors or omissions may have occurred. The Debtors hereby reserve all of their rights to dispute the validity, status or enforceability of any contract, agreement, or lease set forth on Schedule G that may have expired or may have been modified, amended, and supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letters and other documents, instruments, and agreements which may not be listed on Schedule G. Certain of the leases and contracts listed on Schedule G may contain certain renewal options, guarantees of payment, options to purchase, rights of first refusal, and other miscellaneous rights. Such rights, powers, duties, and obligations are not set forth on Schedule G. Certain of the executory agreements may not have been memorialized in writing and could be subject to dispute. In addition, the Debtors may have entered into various other types of agreements in the ordinary course of their businesses, such as barter agreements, easements, rights of way, subordination, non-disturbance and attornment agreements, supplemental agreements, amendments/letter agreements, title agreements, and confidentiality agreements. Such documents may not be set forth on Schedule G. Certain of the agreements listed on Schedule G may be in the nature of conditional sales agreements or secured financings. The Debtors reserve all of their rights to dispute or challenge the characterization of the structure or substance of any transaction, or any document or instrument (including without limitation, any intercompany agreement). In the ordinary course of business, the Debtors may have entered into agreements, written or oral, for the provision of certain services on a month-to-month or at-will basis. Such contracts may not be included on Schedule G. However, the Debtors reserve the right to assert that such agreements constitute executory contracts.

22.     Listing a contract or agreement on Schedule G does not constitute an admission that such contract or agreement is an executory contract or unexpired lease. The Debtors reserve all rights to challenge whether any of the listed contracts, leases, agreements or other documents constitute an executory contract or unexpired lease, including if any are unexpired non-residential real property leases. Any and all of the Debtors' rights, claims, and causes of action with respect to the contracts and agreements listed on Schedule G are hereby reserved and preserved.

23.     In accordance with the Order Authorizing the Debtors to (I) Pay (A) Employees for Accrued Vacation Upon Termination; (B) Salary and Compensation Exceeding the Cap Under Section 507(a)(4) of the Bankruptcy Code to Employees; (C) Non-Executive Employees Under the Modified Severance Plan; and (D) Incentive Plan Payments to Executive

Employees and (II) to Honor the 2004 Stock Plan, entered October 25, 2006 (D.I. 63) (the "Severance Order"), the Debtors are authorized to make certain severance payments to non-executive salaried employees, and to make incentive plan payments to executive employees, both subject to certain terms and limitations as set forth in the Severance Order. Under the Severance Order, non-executive salaried employees, as well as executive employees, who have met the terms and conditions set forth therein to receive severance payments and incentive payments, respectively, are deemed to have filed a timely proof of claim for an allowed general unsecured non-priority claim in the amount of the difference between (y) the amount of the severance accrued for such employee under the Debtors' pre-petition severance plan and (x) the amount such employee receives under the severance plan or incentive plan, as applicable, as authorized under the Severance Order. The Debtors reserve the right to amend their schedules to reflect liquidated amounts of any claims of the Debtors' employees arising pursuant to the Severance Order.